**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **GEORGE DUGARS, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-0241** |
| **TIM WILKINSON, WARDEN, ET AL** | **SECTION "R"(6)** |

**REPORT AND RECOMMENDATION**

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing.  For the following reasons, it is hereby recommended that the instant petition be **DISMISSED WITH PREJUDICE**.

**PROCEDURAL HISTORY**

On May 12, 1998, petitioner, George Dugars, pursuant to his plea of guilty, was convicted of possession of cocaine and simple robbery.  A review of the pertinent transcript reflects the following colloquy:

BY THE COURT:
    Q.  Do you understand that you're pleading guilty to possession of cocaine and ... simple robbery?
    A.  Yes, sir.

> Q. Do you understand on the simple robbery case you can get up to seven years and up to three thousand dollars in fines; on the cocaine case you can get up to five years and up to five thousand dollars in fines?
> A. Yes, sir.
> Q. Do you understand that?
> A. Yes, your Honor....
> Q. Do you understand that you're giving up your privilege against self-incrimination?
> A. Yes, sir.

THE COURT:
> Let the guilty pleas be recorded.
> Are you ready for sentencing in this case?

MS. RENFROE (defense counsel):
> Yes, your Honor, we waive all delays....

THE COURT:
> All right, it's the sentence of this Court to sentence the defendant to seven (7) years on the simple robbery case, a sentence of five (5) years in the department of corrections on the cocaine case to run concurrently.[1]

Thereafter, the prosecution informed that the State was filing "a double bill". Pursuant to this

"double bill", the following discussion ensued:

THE COURT:
> They're charging you that you pled guilty to burglary of an inhabited dwelling back on the 12th day of July, 1990.

THE DEFENDANT:
> I'm aware of that.

THE COURT:
> Do you remember that event?

THE DEFENDANT:
> Yes, sir, your Honor.

---

[1] *See* May 12, 1998 transcript, a copy of which is contained in the State rec., vol. 1 of 4, at pp. 2-4.

THE COURT:
>	Are you one in the same person that pled guilty in Section "B" of the criminal district court on the 12th day of July to simple burglary of an inhabited dwelling?

THE DEFENDANT:
>	Yes, your Honor.

THE COURT:
>	All right, based upon the admissions of the defendant after he's been advised of his rights, I find the defendant to be a multiple offender, a double offender under 15:529.1.  I re-sentence the defendant and it's my understanding the agreement is that he would be a double offender with ten years, is that right?

MS. BOBADILLA (the prosecutor):
>	That's correct, your Honor.

THE COURT:
>	Sentence the defendant on both cases to ten (10) years, department of corrections with credit for time served to run concurrent with each other.

THE DEFENDANT:
>	Thank you, your Honor.  I appreciate it.[2]

After pleading guilty and being sentenced to ten years incarceration, petitioner had five days within which to file a motion for an appeal.  *See* La. Code Crim. P. art. 914.[3]  Petitioner, however, made no effort to seek an appeal.  As such, petitioner's conviction and sentence were rendered final on or about May 17, 1998, after the five days available to lodge an appeal expired.  *See State v. Counterman*, 475 So.2d 336, 338 (La. 1985).

Plaintiff claims to have filed on October 2, 1998, a post-conviction application with the state district court.[4]  While a copy of petitioner's brief in support of his post-conviction

---

[2]*See* May 12, 1998 transcript at pp. 6-8.

[3]Pursuant to Acts 2003, No. 949, §1, La.C.Cr.P. art. 914 was amended to provide defendants with 30 days within which to timely file a motion for an appeal.

[4]The alleged filing date of October 2, 1998 is contained in petitioner's Application for Rehearing, 99-K-0267, which was filed with the Louisiana Fourth Circuit Court of Appeal on January 27, 1999.

3

application is not contained in the State court record, the Louisiana Fourth Circuit issued a decision on March 17, 1999, *State v. Dugars*, 99-K-0267, stating that petitioner's "claims in his application for post conviction relief have no merit."[5]  Petitioner did not seek relief from the Louisiana Supreme Court in connection with the state appellate court's March 17, 1999 decision.

      Approximately two months later, on May 13, 1999, petitioner filed with the state district court a "Motion to Vacate and/or Correct an Illegal Sentence".[6]  In this motion, petitioner raised the following claims:  1) He was "induced to plead guilty on the promise of his attorney that he would be able to earn good-time credits"; 2) the sentences are illegal because the trial court failed to advise him of his right to remain silent and his right to a formal hearing; 3) the sentence are illegal because the trial judge, prior to imposing the enhanced sentences, failed to vacate the original sentences; 4) the sentences are illegal because they were imposed in violation of LSA-R.S. 15:529.1; and, 5) the sentences are illegal because he was "made to navigate" a critical portion of his sentencing proceeding without the assistance of counsel.  On July 8, 1999, petitioner filed with the Louisiana Fourth Circuit Court of Appeal an "Application for Writ of Mandamus", claiming that the state district court had failed to rule upon his motion to vacate.[7]  On September 1, 1999, the Louisiana Fourth Circuit issued its decision, *State v. Dugars*, 99-K-1756 (La. App. 4 Cir. 1999), determining:  "In the interests of judicial economy, this court has reviewed the claims raised by relator in his motion to correct an illegal sentence and finds that he

---

A copy of petitioner's Application for Rehearing is contained in the State rec., vol. 3 of 4.

   [5]A copy of the state appellate court's unpublished decision is contained in the State rec., vol. 3 of 4.

   [6]A copy of petitioner's motion is contained in the State rec., vol. 2 of 4.

   [7]A copy of petitioner's writ of mandamus, 99-K-1756, is contained in the State rec. vol. 3 of 4.

4

has failed to show that he is entitled to relief. La. C.Cr.P. art. 930.2. Therefore, the writ of mandamus is denied."[8] The Louisiana Supreme Court, in connection with 99-K-1756, denied petitioner relief on April 20, 2000. *See State ex rel. Dugars v. State*, 760 So.2d 339 (La. 2000).

It was not until over a year later, on December 23, 2001, that petitioner filed with the state district court a "Motion to Vacate and/or Correct an Illegal Sentence and/or Petition for Emergency Writ of Habeas Corpus and Motion for Amending of Sentence Pursuant La.C.Cr.P. Article 822(C)".[9] Less than two months later, on February 13, 2002, having not yet received a ruling from the state district court in connection with the above-referenced motion, petitioner filed an "Application for Writ of Mandamus" with the Louisiana Fourth Circuit Court of Appeal.[10] On May 15, 2002, the Louisiana Fourth Circuit Court of Appeal issued its decision, *State v. Dugars*, 2002-K-0717 (La. App. 4 Cir. 2002), denying petitioner's writ application.[11] Addressing petitioner's claim that his enhanced ten-year sentence was unlawful because the trial court did not first vacate his original seven-year sentence, the state appellate court noted that petitioner was not arguing that the Louisiana Department of Corrections (D.O.C.) "considered him to have both the original sentence and the multiple bill sentence pending against him, and there is no indication ... that he is facing two sentences...." As such, the court reasoned: "[I]t appears the D.O.C. considers [petitioner] has only one sentence, and it follows that any failure of

---

[8]A copy of the state appellate court's unpublished decision is contained in the State rec., vol. 4 of 4.

[9]A copy of petitioner's December, 2001 motion is contained in the State rec., vol. 1 of 4.

[10]A copy of petitioner's February, 2002 mandamus application is contained in the State rec., vol. 3 of 4.

[11]A copy of the state appellate court's unpublished decision is contained in the State rec., vol. 3 of 4.

the trial court to vacate his original sentence before imposing the multiple offender sentence did not affect his substantial rights. [Citation omitted]."[12]

Petitioner filed several other pleadings within the state judicial system complaining about his multiple-offender adjudication and his enhanced ten-year sentence.[13] Petitioner's efforts in this regard culminated on December 10, 2004, when the Louisiana Supreme Court denied his writ application as "[u]ntimely, non-cognizable, and repetitive, La.C.Cr.P. art. 930.8; *State ex rel. Glover v. State*, 93-2330 (La. 9/5/95), 660 So.2d 1189; La.C.Cr.P. art. 930.4(D)." *State ex rel. Dugars v. State*, 888 So.2d 832 (La. 2004).

Petitioner signed and filed the instant action for federal habeas corpus relief on January 21, 2005.[14] For the reasons set forth below, the instant action should be dismissed as untimely.

## **ANALYSIS**

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a

---

[12]Petitioner did not seek relief from the Louisiana Supreme Court in connection with the state appellate court's adverse decision in 2002-K-0717.

[13]With respect to one such pleading, the Louisiana Fourth Circuit Court of Appeal denied petitioner relief, providing, in pertinent part: "This court has previously considered relator's claim regarding the trial court's failure to vacate the original sentence; it will not consider it again. [Citation omitted.]" *State v. Dugars*, 2003-K-0749 (La. App. 4 Cir. 2003). (A copy of the Louisiana Fourth Circuit's unpublished decision is contained in the State rec., vol. 1 of 4.)

[14]*See* Federal rec., doc. # 1. This January 21, 2005 filing date was ascertained via the court's use of the "mailbox rule." Under this rule, a pleading filed by a prisoner acting *pro se* is considered to be filed for prescriptive purposes on the date it is delivered to prison officials for mailing, rather than the date it is received by the court. *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Generally, the date a prisoner signs his petition is presumed to be the date he delivered it to prison officials for mailing. *See Colarte v. Leblanc*, 40 F.Supp.2d 816, 817 (E.D. La. 1999) (assumed that petitioner turned his habeas corpus application over to prison officials for delivery to this Court on the date he signed his application); *Magee v. Cain*, 2000 WL 1023423, *4 n.2 (E.D. La. 2000) (inferred that filing date and signature date of habeas petition were the same); *Punch v. State*, 1999 WL 562729, *2 n.3 (E.D. La. 1999) (may reasonably be inferred that prisoner delivered habeas petition to prison officials for mailing on date he signed petition).

petitioner has one year within which to bring his habeas corpus claims pursuant to 28 U.S.C. §2254, with this one year period commencing to run from "the latest of" either the date the petitioner's state judgment became final or the expiration of his time for seeking review.[15] *See* 28 U.S.C. §2244(d)(1) (West 2006), as amended by the AEDPA, P.L. 104-132, 110 Stat. 1220.  In this case, petitioner's time for seeking review expired on May 17, 1998.  Thus, petitioner had a year from May 17, 1998, or until May 17, 1999, to timely seek federal habeas corpus relief.

Petitioner did not file the instant action until January 21, 2005, over five years after his limitation period expired.  Thus, petitioner's federal habeas corpus application must be dismissed as untimely, unless the one-year statute of limitations period was interrupted as set forth in 28 U.S.C. §2244(d)(2).  Under that statutory provision, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

Petitioner claims to have filed a post-conviction application with the state district court on October 2, 1998, at which point, approximately four and a half months of his 12-month prescriptive period had expired.  Petitioner's post-conviction application remained pending until March 17, 1999, when the Louisiana Fourth Circuit Court of Appeal denied petitioner relief.  At that point, under the provisions of Louisiana Supreme Court Rule X, Section 5(a), petitioner had 30 days, until April 16, 1999, within which to timely seek relief from the

---

[15] The AEDPA applies to this case as it was filed after the enactment of the AEDPA, or after April 24, 1996.  *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 2060, 138 L.Ed.2d 481 (1997).

Louisiana Supreme Court.  Petitioner, however, did not seek relief from the state high court, waiting approximately another month before filing, on May 13, 1999, a motion to vacate with the state trial court.[16]

The above-referenced motion to vacate remained pending within the state court system until April 20, 2000, when the Louisiana Supreme Court denied petitioner's writ application. *Dugars*, 760 So.2d at 339.  At that point, petitioner had approximately seven months, of his 12-month prescriptive period, remaining.  Petitioner, however, waited approximately 20 months, until December 23, 2001, before filing a motion to vacate with the state district court.  Thus, the instant matter would appear to be time-barred absent a basis for equitably tolling petitioner's prescriptive period.

Equitable tolling is justified only in "'rare and exceptional circumstances.'"  *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), quoting *Davis v. Johnson*, 158 F.3d 806 (5th Cir 1998), *cert. denied*, 526 U.S. 1074, 119 S.Ct. 1474, 143 L.Ed.2d 558 (1999).  It "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights."  *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999), citing *Rashidi v. American President Lines*, 96 F.3d 124, 128 (5th Cir. 1996).  The evidence must show that the applicant, though deterred by matters outside his or her control, was nevertheless diligent in his or her pursuit of §2254 relief.  *Coleman*, 184 F.3d at

---

[16]In *Melancon v. Kaylo*, 259 F.3d 401, 407 (5th Cir. 2001), the Fifth Circuit stated that after an appeal period has lapsed, a state collateral review proceeding "ceases to be pending," and therefore, ceases to interrupt prescription.  As such, petitioner's prescriptive period once again commenced to run on April 16, 1999, when his time to seek review from the Louisiana Supreme Court expired, and continued to run until it was again stopped on May 13, 1999, by virtue of petitioner's filing of his motion to vacate with the state district court.

403.

In this case, petitioner has presented no facts which would warrant the application of equitable tolling. Accordingly, petitioner's habeas application should be dismissed as untimely under §2244(d).

## RECOMMENDATION

It is therefore **RECOMMENDED** that the petition of George Dugars for habeas corpus relief be **DENIED WITH PREJUDICE** as untimely.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F. 3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this __17th__ day of _____October_____, 2006.

_____
LOUIS MOORE, JR.
United States Magistrate Judge